UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANGEL GIRON RODAS,<br><br>                              Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden Otay Mesa Detention Center, et al.,<br><br>                              Respondents. | Case No.:  26-CV-3535 JAO (JAC)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Before the Court is Jose Angel Giron Rodas' ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1).  Also before the Court is Respondents Christopher LaRose's (Warden of Otay Mesa Detention Center), Markwayne Mullin's (Secretary of the Department of Homeland Security), Todd Blanche's (Acting Attorney General), Todd M. Lyon's (Acting Director, Immigration and Customs Enforcement ("ICE")), Patrick Divver's (Field Office Director of San Diego Office of Detention and Removal), and Daren M. Margolin's (collectively, "Respondents") Return to Petition for Writ of Habeas Corpus (ECF No. 6), and Petitioner's Traverse (ECF No. 7).

For the following reasons, the Court **GRANTS IN PART** the Petition for a Writ of Habeas Corpus.

## BACKGROUND

Petitioner is a Guatemalan national who entered the United States without inspection in 2003.  *See* ECF No. 1 ¶ 11.  In the 23 years he has lived in the country he married, worked in the construction and auto-care industries, and became a respected leader of his church.  *See id.* ¶ 12.  On March 9, 2017, Petitioner was placed into removal proceedings, where he applied for cancellation of removal and work authorization.  *See id.* ¶ 13.  The Immigration Court eventually dismissed his removal case without prejudice as a matter of prosecutorial discretion.  *See* ECF No. 1-2 at 15.

Then, on May 23, 2024, Petitioner was arrested in Dulzura, California with an undocumented friend in his car.  *See* ECF No. 1 ¶ 14.  He was charged by Information with transporting an alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  *See* ECF No. 6-2 at 6.  He pleaded guilty to the charge and was sentenced to time served (255 days) on January 10, 2025.  *See id.* at 1–2.

Upon release, he was transferred to what he believes was Border Patrol custody and detained in a tent until January 26, 2025, when ICE served him with a new Notice to Appear and transported him to Otay Mesa Immigration Detention Center.  *See* ECF No. 1 ¶¶ 15–16; ECF No. 6-3.  In removal proceedings, Petitioner applied for asylum, withholding of removal, and relief under the Convention Against Torture.  *See* ECF No. 1 ¶ 21.  He also twice asked Immigration Judges for a custody re-determination, but the judges denied his requests without assessing whether he was a danger to the community or flight risk because they concluded he was subject to mandatory detention under 8 U.S.C. § 1226(c) based on his conviction.  *See* ECF No. 6-4.  Petitioner thus has remained in immigration detention without a bond hearing since January 2025, despite serious health issues.  *See* ECF No. 1 ¶¶ 3–4.

On March 23, 2026, an Immigration Judge denied Petitioner's applications for relief and ordered him removed to Guatemala or Mexico.  *See* ECF No. 6-5.  Petitioner appealed the removal order to the Board of Immigration Appeals (BIA) and it remains

26-CV-3535 JAO (JAC)

pending.  *See* ECF No. 6-6; ECF No. 6 at 3.  As such, Petitioner's removal order is not administratively final.  *See* ECF No. 6 at 3.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner does not dispute that he is detained pursuant to § 1226(c) but argues that his prolonged detention without a bond hearing violates due process.  *See* ECF No. 1 ¶¶ 64–86.  He asserts that the Court should apply a multi-factor test to assess whether the duration of his detention violates the Constitution.  *See id.* ¶ 64 (citing six-factor test from *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019)); *see also* ECF No. 8 ¶ 10 (acknowledging the three-factor test from *Lopez v. Garland*, 631 F. Supp. 3d 870 (E.D. Cal. 2022)).  Respondents argue that (1) mandatory detention under § 1226(c) does not violate due process under *Demore v. Kim*, 538 U.S. 510 (2003), and (2) even under a factor-based test, Petitioner has not shown that his detention is unreasonable.

The Court applies the multi-factor test from *Lopez* and concludes that Petitioner is entitled to a bond hearing.

///

26-CV-3535 JAO (JAC)

**A.      Due Process and *Demore***

In *Demore*, the Supreme Court rejected a facial constitutional challenge to the mandatory detention provision of § 1226(c).  *See Demore*, 538 U.S. at 531.  The Court explained that § 1226(c) "governs detention of deportable criminal aliens *pending their removal proceedings*," and that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 527–28.  Still, the Supreme Court alluded to concerns about prolonged detention by noting that "not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days [the Supreme Court] considered presumptively valid in *Zadvydas*." *Id.* at 529.  Justice Kennedy was even more explicit in a brief concurrence:  "[A] lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified . . . Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532.

Based on this, Respondents argue "*Demore* teaches that detention of noncitizens under § 1226(c) is constitutional so long as detention serves its purported immigration purpose." *See* ECF No. 6 at 5.  They continue that "Petitioner has not demonstrated that his detention has become 'unreasonable or unjustified'" because there is no indication that the government "has unreasonably delayed pursuing and completing his removal proceedings, or that it is seeking to detain him for any reason other than seeking to protect the public and facilitate his removal." *See id.* at 6.  But *Demore* didn't articulate any standard by which to consider whether prolonged detention violates due process. Rather, it simply held that mandatory detention without an *initial* bond hearing did not violate due process.  *See Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024), *cert.*

26-CV-3535 JAO (JAC)

*granted sub nom Genalo v. Black*, 2026 WL 1718025 (June 15, 2026).  And Petitioner *does* argue that his detention has become unreasonably lengthy.  Accordingly, the Court does not think that *Demore* answers the question of how to consider Petitioner's claim such that the Court looks elsewhere for guidance.

Similarly, neither the Ninth Circuit nor the Supreme Court has addressed whether due process requires a bond hearing for noncitizens facing prolonged detention under § 1226(c).  *See Maldonado-Romero v. Warden of Imperial Reg. Detention Facility*, 2026 WL 1333758, at *3 (S.D. Cal. May 13, 2026).  In fact, the Supreme Court just granted a petition for writ of certiorari on the question.  *See Genalo v. Black*, 2026 WL 1718025 (June 15, 2026).  Nonetheless, at least the First, Second, and Third Circuits have concluded that due process may eventually require a bond hearing once detention becomes unreasonably prolonged.  *See Black v. Decker*, 103 F.4th at 143–146; *German Santos v. Warden*, 965 F.3d 203, 209–10 (3rd Cir. 2020); *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021).  And the vast majority of courts in this district have found the same.  *See, e.g.*, *Sanzpierre v. Mullin*, 2026 WL 1495203, at *2 (S.D. Cal. May 28, 2026); *Maldonado-Romero*, 2026 WL 1333758, at *3; *Blake v. Mullin*, 2026 WL 913130, at *2 (S.D. Cal. Apr. 2, 2026).  The Court joins those courts and concludes that prolonged detention under § 1226(c) triggers due process concerns.  Like those other courts, the Court will consider various factors to determine whether Petitioner's detention has become unconstitutionally prolonged.

**B.**    **Prolonged Detention**

As an initial matter, the parties dispute which multi-factor test the Court should apply:  Petitioner argues for the six-factor *Banda* analysis, while Respondents assert that *Lopez* is more appropriate.  *See* ECF No. 1 ¶ 64; ECF No. 6 at 8–9.  The Court agrees with the government on the matter.

The *Banda* test considers:  (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings cause by the

26-CV-3535 JAO (JAC)

government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1106. As Respondents point out, *Lopez* weighs essentially the same factors except for the conditions of detention and the likelihood of removal. *See* ECF No. 6 at 8–9 (citing *Lopez*, 631 F. Supp. 3d at 879). They further argue that excluding consideration of the conditions of confinement is appropriate as those types of claims are not cognizable in habeas. *See id.* at 9. Other courts have noted that conditions of confinement and whether removal proceedings will result in a final order of removal are not particularly relevant to determining whether the *duration* of detention has become unreasonable. *See*, *e.g.*, *Sanchez-Rivera v. Matuszewski*, 2023 WL 139801, at *6 (citation omitted); *Lopez*, 631 F. Supp. 3d at 879. The Court tends to agree with the reasoning of those courts and thus applies the three-factor *Lopez* test. As such, the Court considers "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

The Court finds that Petitioner has established he is entitled to a bond hearing. Petitioner's length of detention, now nearly eighteen months, without a bond hearing weighs in Petitioner's favor. Courts have found detention of similar lengths without a bond hearing supports a finding that detention has become unreasonable. *See Sanzpierre*, 2026 WL 1495203, at *2 ("Petitioner's length of detention, over sixteen months, without a bond hearing weighs in Petitioner's favor."); *see also Sanchez-Rivera*, 2023 WL 139801, at *6 ("In general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." (internal quotations, alterations, and citations omitted)). Respondents recognize that courts are wary of permitting detention without a bond hearing beyond the one-year mark, yet still argue that this factor does not weigh in favor of Petitioner. Instead, they cite cases where the petitioner was detained longer than Petitioner, but just because some folks have been detained longer than Petitioner does not mean due process is satisfied. In fact, many courts have found *shorter* periods of detention to be unconstitutional. *See*, *e.g.*,

26-CV-3535 JAO (JAC)

*Maldonado-Romero*, 2026 WL 1333758, at *3 (seven months); *see also Abdul Kadir v. Larose*, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable.").  The length of detention therefore favors Petitioner.

As to the likely duration of future detention, Petitioner has appealed to the BIA and, if not granted relief, will appeal that decision, meaning "Petitioner may be subject to detention for many more months if not years before final adjudication."  ECF No. 1 ¶ 70. Courts have concluded that the lengthy BIA appeal process, which could take years, typically tilts this factor in favor of the petitioner.  *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1119 (noting that process may take two years); *Lopez*, 631 F. Supp. 3d at 881 ("Although the Court recognizes, as argued by Respondents, that future events are difficult to predict, the Court nevertheless finds that Petitioner's administrative appeals and possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner." (Citation omitted)).  Respondents argue that Petitioner cannot "rely on the delays attendant to his decisions to establish a due process violation," but Petitioner's "BIA appeal . . . [is a] perfectly legitimate proceeding[] he is legally entitled to pursue," which "does not redound to [Petitioner's] discredit."  *Masood v. Barr*, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020).  The Court concludes this factor weighs in favor of Petitioner.

The delay in removal proceedings factor is neutral since the record does not demonstrate unreasonable delay by either side.  Respondents argue that this factor favors the government because Petitioner's request for a continuance of his Individual Hearing delayed his removal proceedings by four months.  *See* ECF No. 6 at 9–10 (citing ECF No. 1 at 7).  But Petitioner responds that the decision to continue the Individual Hearing by that length of time was made by the Immigration Court and that the request for a continuance was a good faith attempt to litigate his case.  *See* ECF No. 8 ¶¶ 25–26. Further, even if the Court excluded that four-month period, Petitioner's detention has still extended beyond a year.  Balancing the discussed factors, the Court concludes that

26-CV-3535 JAO (JAC)

Petitioner's detention has become unreasonably prolonged, and therefore, Petitioner is entitled to a bond hearing.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** the Petition for a Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to provide Petitioner with an individualized bond hearing within <u>fourteen (14) days</u> before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released.  If no hearing occurs within fourteen days of this Order, Petitioner shall be released from Respondents' custody.  The Parties **SHALL** file a Joint Status Report by <u>July 24, 2026</u>, informing the Court of the outcome of the hearing.[1]

**IT IS SO ORDERED.**

Dated:  July 6, 2026



Jill A. Otake
United States District Judge

---

[1] Petitioner requested attorney's fees, related expenses, and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  *See* ECF No. 1 at 31.  Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.  *See* 28 U.S.C. § 2412(d)(1)(B).

26-CV-3535 JAO (JAC)